804 So.2d 132 (2001)
STATE of Louisiana
v.
Daniel BLANK.
No. 01-KA-564.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
*134 Anthony G. Falterman, District Attorney, 23rd Judicial District, Donald D. Candell, Assistant District Attorney, Gonzales, for appellee.
Jane L. Beebe, Gretna, for appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, J.
Defendant/Appellant, Daniel Blank, appeals from the court's ruling which held that his confessions, related to the murder of Barbara Bourgeois, were admissible at trial. Blank alleges that the confessions, taken on separate occasions, were not knowingly, intelligently, or voluntarily made. For the following reasons, we affirm.
On February 10, 1998, in the Twenty-Ninth Judicial District Court for the Parish of St. James, Daniel Blank was charged by indictment with one count of first degree murder, a violation of LSA R.S. 14:30, for the murder of Barbara Bourgeois. On March 17, 1998, Blank was arraigned and entered a plea of "not guilty." Blank filed more than 30 pre-trial motions, including a motion to suppress confessions from November 13 and 14, 1997, and a confession from April 24, 2000 at Angola State Penitentiary. A hearing on the motion to suppress the confessions from November 13 and 14, 1997 was held on August 9, 2000, and the trial court ruled that these confessions, from the November dates in question, were admissible.
On December 5, 2000, the State amended the indictment to charge one count of second degree murder, in violation of LSA-R.S. 14:30.1. Blank was re-arraigned on the charge of second degree murder and pled not guilty. After this arraignment, a hearing on the motion to suppress the confession of April 24, 2000 was held. Following that motion, the trial court ruled the confession from the April date was admissible. The trial court then rendered *135 written reasons for judgment, denying Blank's motion to suppress.
On February 5, 2001, jury selection began in Blank's trial and on February 6, 2001, the jury was impaneled. After the trial had begun, however, Blank pled guilty to second degree murder of Barbara Bourgeois. Blank was advised of his constitutional rights, and entered his plea pursuant to State v. Crosby,[1] reserving his right to appeal the ruling on the motion to suppress the statements. The trial court sentenced Blank to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
The following facts were recited by the court and stipulated to by Blank at the February 6, 2001 plea and sentencing:
On the night of March 18, 1997, or in the early morning of March 19, 1997, in the Parish of St. James, Daniel Blank committed second degree murder of Barbara Bourgeois. Daniel Blank walked to the residence of Barbara Bourgeois for the purpose of committing a theft therein. He disabled the telephone wires at her residence. Daniel Blank then unlawfully entered the residence of Barbara Bourgeois through the utility room. Once inside the residence, Daniel Blank began to look for money. Barbara Bourgeois awoke and confronted Daniel Blank who armed himself with a vacuum cleaner and hit her repeatedly in the head and body causing large hematomas, mass blunt trauma to the face, fractured nasal bones, injuries to her trunk, chest, and both shoulders causing a fractured sternum and hemorrhage which caused her death.

LAW AND ANALYSIS
Blank alleges one assignment of error on appeal, arguing that the trial court erred in failing to suppress the appellant's confessions of November 13 and 14, 1997 and April 24, 2000.
On December 9, 10, and 29, 1998, the Twenty-Third Judicial District Court conducted hearings on the motion to suppress statements made by Blank on November 13 and 14, 1997 in case number 10677. On July 22, 23, and 26, 1999, the Fortieth Judicial District Court also conducted hearings on Blank's motion to suppress statements in case number 97-639.[2] In this case, the 29th Judicial District Court heard Blank's motion to suppress the same statements on August 9, 2000. Since the evidence and testimony would be identical, both Blank and the State agreed in this case to submit into evidence the transcript, arguments and original videotapes of the suppression hearings from the Twenty-Third and Fortieth Judicial District Court. Also in this case, the hearing for the motion to suppress the statements that occurred at Angola, was held on December 5, 2000. Several witnesses were called at that hearing by the State.

November 13 and 14, 1997 Confession
Blank argues that the trial court erred in admitting the confessions from November 13 and 14, 1997, because they were not knowingly, intelligently, and voluntarily made. Blank further claims that he was deprived of food, cigarettes and sleep during the interrogation, and contends that only after he confessed to some involvement *136 in the homicides after six to seven hours of interrogation, was he allowed to smoke in the interrogation room. Blank further argues that he collapsed from fatigue and began weeping when the detective told him that his deceased mother would want him to confess. Blank also asserts that the detectives administered a polygraph test and induced his confession when they falsified the results. Finally, Blank contends that the collective nature of the deprivation of food, sleep, cigarettes, the falsified results of the polygraph test, and the mention of his deceased mother, all amounted to coercion in inducing him to confess.
In its reasons for judgment, the trial court ruled that the November 13 and 14, 1997 confessions were admissible, stating that the videotaped confession demonstrated that Blank waived his rights before answering any questions. The trial court noted:
The defendant did not put on any testimony to indicate that he was deprived of food, nor is there evidence that he asked for anything to eat. The videotaped confession clearly shows that he was given something to drink when he asked for it. There is no evidence to show that law enforcement withheld food for the purpose of obtaining a confession. The defendant also mentions that he was not allowed to smoke. This simply does not rise to the level of making the confession involuntary. Also, the defendant asserts that because he was tired the confession is invalid. However, he was fully advised of his rights and could have stopped the questioning at any time. He chose not to do so. No evidence of police brutality, beatings or physical mistreatment was presented and no accusations were made. The physical tactics frequently used by police and that necessitated the ruling in Miranda are not evidenced by the videotape or any testimony.
Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[3] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises.[4] A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstance of each situation.[5] The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.[6] Also, in State v. Serrato,[7] and in State v. Shepherd,[8] the courts have held that the trial judge must consider the totality of the circumstances in deciding whether the confession is admissible.
The evidence presented at the suppression hearing on December 9, 1998 before the Twenty-Third Judicial District Court established the following facts: *137 Blank was living Onalaska, Texas, where he set up an automotive repair shop at the time of the interrogation. On November 11, 1997, a task force of detectives from Ascension and St. John the Baptist Parishes went to Onalaska to speak to Blank. On November 13, 1997, at around 12:30 p.m., Detectives Mike Nettles, a Texas police officer, and Mike Toney of the Ascension Parish Sheriff's Office, approached Blank at his repair shop and asked him if he would speak with them at the Polk County Courthouse Annex. Detective Toney testified that Blank was not arrested, nor was he handcuffed. He stated that Blank voluntarily went with the detectives. Blank was brought to an interview room that was set up with a video camera in plain view.
Immediately upon entering the interview room, Detective Todd Hymel of the St. John Sheriffs Office informed Blank that he was not under arrest. Blank responded that "he was not even worried about that." Detective Hymel next advised Blank of his Miranda rights, which he stated he understood. Then Detective Hymel asked Blank, "Are you willing to answer questions at this time without a lawyer present?" Blank responded in the affirmative saying, "Yeah I'll answer them... I'll answer anything you ask, I mean I ain't got nothing to hide."
Considering the foregoing exchanges and the record in this case, we find that the State established that Blank was advised of his Miranda rights before questions began, and that he understood those rights. Once the State proves that the Miranda warnings have been given, the statements must then have been made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises.[9]

Food
The record indicates that Blank did not ask for any food during the entire interview on November 13, 1997; he also did not indicate that he was hungry. In the transcript of the hearing on the motion to suppress before the Twenty-Third Judicial District Court, Detective Hymel testified that during the November 13 interview, Blank did not ask for any food, and had he requested food, he would have received it.
The detectives offered Blank something to drink on several occasions. Detective Hymel testified that he reviewed the taped interview several times and stated that Blank was provided five drinksfour Cokes and one cup of water. The twelve and one-half hour video of the interview is the best evidence to determine whether the confession was induced from lack of food. Upon review of the tapes, there appears no indication that Blank's confession resulted from lack of food. There was no express statement or mention of food by either the detectives or Blank. The detectives did not promise to give Blank food if he confessed. Further, the detectives did not eat in front of him, and Detective Toney stated that neither he nor Detective Hymel ate anything during the time frame of the interview. In light of the fact that the detectives provided Blank with drinks, bathroom breaks, and adjusted the temperature in the interview room, there is nothing in the record to suggest that Blank would have been denied food upon request. In light of the totality of the circumstances, there appears to be no coercion by the detectives to induce a confession from lack of food.

Cigarettes
Blank tried to smoke a cigarette in the interview room; however, Detective *138 Hymel informed him that he could not smoke in the building. Detective Hymel testified that at approximately 3:45 p.m., which was two hours and forty-five minutes into the interview, Blank lit up a cigarette for fifteen seconds while he was not in the room. When Detective Hymel returned to the interview room, he informed Blank that he could not smoke in the building and directed him to put out the cigarette, explaining that there was a "no smoking" sign posted on the door. Detective Hymel also stated that shortly thereafter, at around 4:10 p.m., right before the polygraph test was to be administered, Blank had a 12-minute break where he went to the bathroom. Detective Hymel testified that Blank smoked a cigarette while in the bathroom. Detective Hymel stated that after Blank smoked in the bathroom, the detectives continued to let him smoke. Detective Hymel also stated that Blank smoked a cigarette nine times on camera and one time off camera, in the bathroom. Detective Mike Toney, the other officer present in the interview room, also testified that Blank smoked a cigarette prior to confessing.
A review of the record indicates that Blank did smoke prior to admitting some involvement in the crimes. Both Detective Hymel and Toney testified that at first, Blank was not allowed to smoke because of the "no smoking" sign. Based on the record and their testimony, it appears that the initial denial of the Blank's request to smoke was not because of police coercion but due to the no smoking regulation at the Texas courthouse. However, Detective Hymel stated that once Blank smoked in the bathroom, they allowed him to smoke in the interview room.

Sleep
Within the first three hours of the interview, Blank indicated that he was sleepy when he stated, "Sitting here ain't doing nothing, getting sleepy." Before the polygraph test was administered, Blank stated to David Sparks, the polygraph examiner, that he went to bed the previous night between 12:00 a.m. and 1:30 a.m. and woke up the next morning around 8:10 a.m. Blank also stated that he was up late working on a transmission. A review of the tapes also indicates that Blank put his head on the table when the officers were out of the room. The issue is whether Blank was deprived of sleep and, if so, whether this amounted to police misconduct which induced an involuntary confession. Based on the record, it appears that Blank did not request any sleep, only that he was tired from not doing anything and from working late on a transmission. The detectives did not promise Blank that they would allow him to sleep if he confessed. The record indicates that Blank had seven to eight hours of sleep the night before. Also, Blank was up the previous night to 1:00 a.m. which is around the time the interview ended in this case.
In light of the foregoing, it appears that the detectives did not deprive Blank of sleep as he claims. Detective Hymel testified that Blank was allowed 14 breaks throughout the 12-hour interrogation. Blank was appraised of his rights, including the right to remain silent and that he could stop the questioning at anytime. In this case, Blank did not invoke the right to remain silent, and at no point did he state that he wanted to stop the interview because he wanted sleep.

Mention of deceased mother
Blank alleges that the detectives coerced him into confessing by the repeated mention of his deceased mother. During the interview, the detectives explained to Blank that his deceased mother would want him to take responsibility and admit to the crimes. At that point, Blank broke down and began to cry. Thereafter, *139 he admitted to his involvement in the crimes. A confession is not rendered inadmissible because officers exhort or adjure an accused to tell the truth, provided the exhortation is not accompanied by an inducement in the nature of a threat or which implies a promise of reward.[10] In this case, the repeated references to Blank's deceased mother and the exhortation to tell the truth and take responsibility for his actions did not make the confession inadmissible. The detectives did not threaten or promise Blank anything in reference to his mother in obtaining the confession.

Polygraph
In Blank's appellate brief, he alleges that the detectives administered a polygraph test and falsified the results of the examination to induce his confession. Blank did not specifically brief this issue. He made no page reference in the record to support this claim. Assignments of error that are neither briefed nor argued are considered abandoned.[11] We therefore will not consider this aspect of Blank's appeal.
The voluntariness of a confession is made on a case-by-case basis, depending on the facts and circumstance of each situation, and the court must look at the totality of the circumstances.[12] Based on the totality of circumstances, we find that Blank's confession was voluntary and was not induced by the detectives through coercion. In this case, Blank was not deprived of cigarettes prior to admitting some involvement in the crimes. Both Detectives Toney and Hymel testified that Blank smoked a cigarette prior to confessing. Detective Hymel did state that the first time Blank lit a cigarette, he told him to put it out because there was a no smoking policy in the courthouse. Blank further did not request any food or sleep or mention that he was hungry. Blank was allowed to go to the bathroom anytime upon request and was provided several drinks and breaks. At one point during the interview, Blank complained that he was cold. The detectives adjusted the thermostat to accommodate him. There is nothing in the record to suggest that Blank would not have been provided food or sleep upon request. Further, Blank was read his rights, understood those rights, and could have stopped the interview at anytime.

April 24, 2000 Confession from Angola
Blank argues that the statement to the police specifically regarding the victim, Barbara Bourgeois, given while he was in Angola, was not a voluntary confession because he had previously invoked his right to counsel. Blank further asserts that due to his limited mental capacity he did not voluntarily waive his right to counsel. In light of this argument, Blank contends that the State did not prove beyond a reasonable doubt that his confession was voluntary.
The hearing to suppress this confession was held on December 5, 2000. The trial court ruled that the confession was admissible. In its reasons for judgment, the trial court stated:

*140 In Edward [Edwards] v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), U.S. Supreme Court held that when an accused has invoked his right under Miranda to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he had been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police.
The trial court went on to explain that this case presented the same situation as Edwards v. Arizona. Blank initiated conversation with Major Melancon of Angola and expressed a desire to speak to authorities about the murder of Barbara Bourgeois. The trial court found that Blank was read his Miranda rights before he gave his statements and that the waiver of counsel was knowing, intelligent and voluntary.
At the hearing on the motion to suppress held on December 5, 2000, Major Warren Melancon testified. Melancon was employed at Angola State Penitentiary at the time of Blank's statement. He stated that he received a call from Major Rigatorio on April 20, 2000 informing him that Daniel Blank wanted to speak to him and make a confession. Major Melancon testified that Blank handed him a three-page written confession. Melancon stated that before Blank handed him the written statement, he advised Blank of his constitutional rights and had him sign a waiver of rights form. Melancon then asked Blank if he wanted to speak to the deputies from St. James, St. John and Ascension Parishes, to which he responded affirmatively. Melancon then drafted a waiver of right to counsel form that was signed by Blank and two witnesses and then notarized. The document stated:
I am hereby requesting to speak with deputies from the St. John Parish, Ascension Parish and St. James Parish. I wish to speak with them without my attorney present.
No promises or threats have been made to me and no pressure of any kind has been used against me.
Detective Andrew Duhe of the St. James Sheriffs Office also testified at the suppression hearing. Duhe stated that he received a call from Angola that Blank wanted to speak to the investigating officers concerning several homicides. Detective Duhe testified that before he discussed anything with Blank, he advised him of his rights and executed a signed waiver form. On this waiver form, Detective Duhe wrote at the bottom that Blank had an eighth-grade education. Detective Duhe stated that Blank understood the waiver of rights form and signed it freely and voluntarily. On cross-examination, Duhe stated that he asked Blank to name his attorneys, and he did so. Next, Duhe asked Blank if he still wanted to speak to him without his attorneys present. Blank responded affirmatively. Based on this testimony and the exhibits presented at the suppression hearing, the record suggests that the trial court did not err in ruling that Blank initiated the conversation and that there was a valid waiver of counsel.
Blank's assertion that his diminished mental capacity resulted in an involuntary confession is without merit. The Louisiana Supreme Court has held that diminished mental or intellectual capacity does not of itself vitiate the ability to make a knowing and intelligent waiver of constitutional rights and a free and voluntary *141 confession.[13] After reviewing the transcript of the statement on April 24, 2000, there is nothing to indicate that Blank did not knowingly and intelligently waive his right to counsel. Detective Duhe and Major Melancon both testified that Blank knew what he was doing and that Blank understood he was waiving his rights, including his right to counsel. During the interview, Detective Duhe asked Blank to read out loud the signed statement that was prepared by Melancon, stating that he wanted to speak to authorities without his attorneys present. After Blank read the statement out loud, Duhe asked him who his attorneys were, to which he responded Mr. Cortello and Mr. Van Dyke. Blank agreed to speak to Duhe without his attorneys present.
Based on the foregoing, we cannot say that the trial court erred in admitting the statement given at Angola. Although Blank had an eighth-grade education, he read out loud the signed waiver of his right to counsel. He also agreed to speak without his attorneys, Mr. Cortello and Mr. Van Dyke, present. The assertion by Blank that his diminished mental capacity resulted in an involuntary waiver of counsel is not supported by the record.
This assignment of error is without merit as to all confessions at issue in this case given to police by Blank.
Blank requests, pursuant to LSA-C.Cr.P. art. 920, a review of the record for errors patent. Our review reveals no errors patent present.
In summary, it is the opinion of this Court that the trial court did not commit manifest error in allowing the confessions of Daniel Blank to be admitted into evidence. A review of the record supports a finding that the confessions were knowingly, intelligently, and voluntarily made. For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] 338 So.2d 584 (La.1976)
[2] The defendant was tried and convicted of first degree murder in the Twenty-Third Judicial District Court for the murder of Lillian Phillipe and also tried and convicted of first degree murder in the Fortieth Judicial District Court for the murder of Joan Brock. In this case, the State and the defendant adopted the testimony and arguments from the hearings on the motion to suppress the confessions of November 13 and 14, 1997, from those cases.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] LSA-R.S. 15:451; State v. Comeaux, 93-2729, p. 47 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); State v. Watts, 98-1073 (La.App. 5 Cir. 5/19/99), 735 So.2d 866, 869.
[5] State v. Watts, 735 So.2d at 869.
[6] Id.
[7] 424 So.2d 214, 221 (La.1982).
[8] 449 So.2d 1120, 1123 (La.App. 5th Cir. 1984).
[9] Comeaux, supra.
[10] State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, 31, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155. State v. Watts, 735 So.2d at 870.
[11] State v. Addison, 00-KA-1730 (La.App. 5 Cir. 5/16/01), 788 So.2d 608; State v. Allen, 451 So.2d 618 (La.App. 5 Cir.1984); Uniform Rules-Courts of Appeal, Rule 2-12.4.
[12] State v. Watts, 735 So.2d at 869; State v. Serrato, 424 So.2d at 221.
[13] State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, 1054; State v. Brooks, 648 So.2d 366, 373 (La.1995).