860 So.2d 31 (2003)
STATE of Louisiana
v.
Dustin McLELLAND.
No. 03-KA-498.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 2003.
*33 Margaret S. Sollars, Thibodaux, Louisiana, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, Juliet Clark, Counsel of Record on Appeal, Kia Habisreitinger, Trial Counsel, Martin Belanger, Assistant District Attorneys, Gretna, Louisiana, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Dustin McLelland, appeals from his conviction of attempted aggravated rape and sentence of 45 years imprisonment at hard labor, and from his conviction of attempted aggravated crime against nature and sentence of five years imprisonment at hard labor. We affirm and remand.
On December 20, 2001, the Defendant was indicted by a grand jury for aggravated rape of a juvenile, a violation of La. R.S.14:42, and aggravated crime against nature against a juvenile, a violation of La.R.S. 14:89.1. A sanity hearing was conducted and the Defendant was found competent to stand trial. On November 18, 2002, the Defendant was tried by a 12 person jury and found guilty of attempted aggravated rape and attempted aggravated crime against nature. On December 5, 2002, the trial judge sentenced the Defendant to 45 years imprisonment at hard labor on the attempted aggravated rape conviction, and five years imprisonment at hard labor on the attempted crime against nature conviction.[1]
For five years prior to the date of this incident, Estelle Watts (Watts) and M.N.,[2] the victim's mother, were friends. Watts is the mother of three minor children, including the Defendant, Dustin McLelland, who was 17 years old at the time of this incident. The Defendant dropped out of high school and helped his mother by working around the house and babysitting. The Defendant babysat with his younger siblings (ages eight and three) and with J.B., M.N.'s five-year-old daughter.
In the fall of 2001, M.N. was preparing to take J.B. to the babysitter's house and the child indicated that she did not want to go. M.N. found this strange because J.B. had loved being able to go to the babysitter's house. When questioned, the child told her mother "Dustin hurt me, mommy, Dustin hurt me real bad." The child indicated that Dustin hurt her "noogie" and "coochie" (i.e., vagina). J.B. told her mother that Dustin put his "peanut" (i.e., penis) there and in her mouth, hurting her. She also said that he put it by her butt and she screamed so he stopped, but that he then put her on the floor and made her do it.
M.N. did not immediately alert the police because she was friends with Watts and she contacted her to see if they could handle the matter. A month later, when no action was taken by Watts, M.N. contacted the police. After the police became involved, M.N. and J.B. went to the Jefferson Parish Detective's Office where they met with Detective Kelly Jones, the Supervisor *34 of the Personal Violence Unit of the Jefferson Parish Sheriff's Office (JPSO). Officer Jones found J.B. to be withdrawn and afraid during the interview. However, she reported that the Defendant hurt her in her "coochie" and her "butt." The child thereafter explained by pointing to her vaginal and rectal areas.
On November 1, 2001, the Defendant was arrested by the JPSO. He was transported to the Detective Bureau following the arrest where he met with Detective Edward Klein who advised him of his constitutional rights under Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Defendant gave an audio taped statement in which he admitted to engaging in sexual relations with the child about five to ten times over a two week period, approximately three months before the statement date. The Defendant indicated that he removed the child's clothes and, while in the bathroom, he partially penetrated her anus twice. He also admitted to rubbing her vaginal area with his hand and the tip of his penis. Additionally, he admitted rubbing lotion on the victim's legs and placing his penis between her legs before ejaculating onto the floor. The taped confession was submitted into evidence and played for the jury. They also received a transcription of the statement
On November 6, 2001, M.N. and J.B. met with Omalee Gordon, a forensic interviewer with the Gretna Police Department, at the Child Advocacy Center. J.B. agreed to the taped interview. She recounted the sexual abuse she had previously relayed to her mother and the investigating officer. The taped interview was later played at trial.
On November 20, 2001, M.N. and J.B. were seen by Dr. Scott Benton, an expert in Pediatric Forensic Medicine and the director of the Children's Risk Evaluation Center. During the interview, J.B. told Dr. Benton that, when she went to the Defendant's house, he took off his clothes and her clothes and made her lay down. According to J.B., the Defendant put his "peanut" in her "nookie" and her "butt" and stated that these actions hurt her. She said that the Defendant put lotion on his penis and that "white" came out of his penis. She also told Dr. Benton that the Defendant told her that he had "booga [sic] monsters." According to Dr. Benton, the child denied being abused by anyone else.
Dr. Benton conducted a physical examination and found the child's hymen intact and no other abnormal findings. Dr. Benton explained that the delay in reporting could explain the lack of physical findings. He noted that the vagina, mouth, and anus are mucosal tissue, and have excellent healing properties. He also testified that penetration into the vagina may occur without damage to the hymen, because of its doughnut shape and elasticity. He stated that the breaking of the hymen can depend on the force exerted. He added that the application of lubricant could have helped avoid damage during insertion.
Both the audio taped confession and the child's taped interview were admitted into evidence and played for the jury. The jury also received a transcription of the Defendant's statement.
On appeal, the Defendant contends that the trial judge erred by allowing the admission of his confession into evidence. He also asserts that the sentences imposed are excessive, and that his counsel was ineffective by failing to object or make a motion for reconsideration of the excessive sentences.

SUPPRESSION OF THE CONFESSION
The Defendant first contends that his custodial statement to police was inadmissible *35 because it was not freely given. He contends that he was induced to give the statement because of police promises of leniency and restoration of his freedom.
At the hearing on the motion to suppress a statement or confession, the State bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. La.C.Cr.P. art. 703(C); State v. Hills, 354 So.2d 186, 188 (La.1977). Before the prosecutor may introduce a statement or confession into evidence, it must be shown that the statement or confession did not result from fear, duress, intimidation, menace, threats, inducements or promises. La.R.S. 15:451; State v. Lucky, 96-1687, p. 16 (La.4/13/99), 755 So.2d 845, 855, reh'g denied, (La.9/17/99), 755 So.2d 861, cert. denied, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000); State v. Blank, 01-564, p. 6 (La.App. 5th Cir.11/27/01), 804 So.2d 132, 136. If the accused is in custody, he must also have been first advised of his constitutional rights. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, Lucky, 96-1687 at 16, 755 So.2d at 855; Blank, 01-564 at p. 5, 804 So.2d at 136. A statement or confession obtained by direct or implied promises, however slight, or by the exertion of improper influence must be considered involuntary and thus, inadmissible. State v. Morvant, 384 So.2d 765, 770 (La.1980), quoting State v. Jackson, 381 So.2d 485, 487 (La.1980); State v. Holloway, 37,021, p. 10 (La.App. 2nd Cir.5/16/03), 847 So.2d 200, 208. However, a remark by a police officer telling the defendant that the officer will "help" or "do what he can or things will go easier" will not negate the voluntary nature of the confession. State v. Sepulvado, 93-2692, p. 4 (La.4/8/96), 672 So.2d 158, 163, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227, reh'g denied, 519 U.S. 1035, 117 S.Ct. 600, 136 L.Ed.2d 527; Petterway, 403 So.2d 1157, 1160 (La.1981); Holloway, 37,021 at 10, 847 So.2d at 208. Such statements have been characterized by the Louisiana Supreme Court as "musing" and "not much beyond what the defendant might well have concluded for himself," namely, that he should tell the truth. State v. Petterway, 403 So.2d at 1160. See also: Sepulvado, 93-2692 at 4, 672 So.2d at 163.
The determination of voluntariness is made on a case-by-case basis and such a determination rests upon the totality of the circumstances. Sepulvado, 93-2692 at 4, 672 So.2d at 163; Blank, 01-564 at p. 7, 804 So.2d at 137. The admissibility of a statement or confession is a determination for the trial judge and his conclusions regarding credibility and weight of the testimony concerning the voluntary nature of the statement or confession will not be overturned unless unsupported by the evidence. State v. Thibodeaux, 99-1673, p. 12 (La.9/8/99), 750 So.2d 916, 922, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000); State v. Onezime, 01-1018, p. 17 (La.App. 5th Cir.2/26/02), 811 So.2d 1033, 1043, writ denied, 02-1099 (La.3/21/03), 840 So.2d 535. In reviewing the correctness of the trial court's ruling on the motion to suppress, the appellate court is not limited to evidence adduced at the hearing on the motion, but may also consider pertinent evidence given at trial. Onezime, 01-1018, p. 17, 811 So.2d at 1043-1044.
Detective Kline was the sole witness to testify at the hearing on the motion to suppress. He testified that, on November 1, 2001, he received a call from the Third District to investigate the rape of a five-year-old female. Detective Kline proceeded to the Third District, where he met M.N. and J.B. M.N. reported to him that she was bringing her daughter to the babysitter and J.B. advised her that she did not want to go there because "Dustin hurts *36 her private with his peanut." The Detective spoke with the investigating officer, Officer Bianca Simmons, and then met with the Defendant at the Detective Bureau. Detective Kline advised the Defendant of his constitutional rights under Miranda prior to speaking with him. The Defendant indicated that he understood them and wanted to give the statement. Detective Kline stated that the Defendant was not coerced, threatened or given any promises for his agreement to give the statement, and specifically denied telling the Defendant that his consent to give a statement would help him or that he would receive a lesser charge or be released to go home if he cooperated, or that the Detective would help him out if he gave a statement.
At trial, Detective Kline reiterated his testimony from the hearing on the motion to suppress, and further testified that the Defendant appeared worried, but not afraid, at the time of the statement. At trial, the Detective added that he advised the Defendant that he was under arrest and charged with aggravated rape, but did not advise him of the penalty for the charge. The Defendant did not ask to stop the interview at any time.
The Defendant testified at trial, contending that portions of his statement to Detective Kline were not true. The Defendant admitted at trial to putting lotion on J.B. and putting his penis between her legs, but not to the other statements in his confession or the other allegations made by the child. In an attempt to explain the discrepancy between his confession and trial testimony, the Defendant stated:
DEFENDANT:
The reason when I had made the statement with this detective, because he did promise me that he would help me out here, that I would be able to go back home to my family. And, when he told me that, my mind was all cluttered up, I was crying, I was worried, I was scared, and the first thing I thought of when he said "home," is my mom and my little brothers, because I did not want to have them stuck out like they are.
Based on the totality of the circumstances in this case, we find that the trial judge did not err in finding that the Defendant's statements were voluntary and admissible at trial. Detective Kline was the only witness at the hearing on the motion to suppress the confession. He testified that he twice advised the Defendant of his Miranda rights. Despite the warning that he was entitled to remain silent, the Defendant told him that he wanted to make a statement. Detective Kline stated that he did not tell the Defendant that he would help him or that the Defendant would be able to go home if he made a statement. Detective Kline testified that no one induced the confession by force, threats, or coercion of any kind. Furthermore, although the Defendant claimed at trial that he was induced by promises to confess to the crimes, the Defendant's credibility was impugned during cross-examination when he stated that he lied to the investigator about the sexual acts in which he engaged with the victim. The trial judge weighed the testimony and credibility of the witnesses and his determination is supported by the evidence. Thus, we find no error in the ruling of the trial judge. See: Thibodeaux, 98-1673 at 12, 750 So.2d at 922.

EXCESSIVE SENTENCE
Next, the Defendant asserts that his sentence for attempted aggravated rape is excessive, so, his trial counsel was ineffective for failing to file a motion to *37 reconsider the sentence.[3]
The record reflects that the Defendant did not lodge an objection to the sentence and did not file a motion for reconsideration of sentence. However, we routinely review sentences for constitutional excessiveness when the defendant fails to lodge an objection to the sentence. See: State v. Ewens, 98-1096, p. 10 (La.App. 5th Cir.3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99) 750 So.2d 179; State v. Smothers, 02-277, p, 19 (La.App. 5th Cir.12/30/02), 836 So.2d 559, 571. Thus, we will perform a review for constitutional excessiveness of the sentence.
The Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to ... excessive ... punishment." Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. Id. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. Smith, 01-2574 at 6, 839 So.2d at 4. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. Smith, 01-2574, at 6-7, 839 So.2d at 4.
In determining a sentence, the trial court is to consider the sentencing guidelines set forth by La.C.Cr.P. art. 894.1. In addition, the sentencing judge "shall state for the record the considerations taken into account and the factual basis therefore in imposing sentence." La. C.Cr.P. art. 894.1(C). However, when the trial judge fails to articulate every circumstance listed in La.C.Cr.P. art. 894.1, a remand is not necessary if there is an adequate factual basis for the sentence contained in the record. State v. Fairley, 02-168, p. 8 (La.App. 5th Cir.6/26/02), 822 So.2d 812, 817.
In support of his argument that this sentence is excessive, the Defendant urges consideration of his age, lack of criminal history, and that the incident was a "one-time occurrence." Second, he contends that a maximum sentence should be reserved for the worst offenders and that the trial judge misconstrued the jury's finding and the victim impact statements which somehow lead to the excessive sentence.
The sentencing range statutorily prescribed for the offense of attempted aggravated rape is imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for not less than ten, nor more than 50 years. La.R.S. 14:42 and R.S. 14:27. In this case, the trial court sentenced the Defendant to 45 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, but with credit for time served. Thus, the sentence imposed was within statutory limits.
Prior to sentencing, the Defendant's counsel pointed out that the Defendant had never been in trouble before, realized the impact of his actions, was very remorseful at trial, and was only 18 years of age.
The State called M.N. to testify as a victim-impact witness. She stated that, *38 although the Defendant was only 18 years old J.B. was only four years old when the incident happened, and that the child has exhibited serious behavioral problems since the incident. The child has been setting fires, throwing temper tantrums, screaming, biting, kicking and fighting, as well as banging her head against doors. She has been asked to leave three kindergarten classes because of her behavior. M.N. further testified that the child shaved the top of her head, cut her clothing, cut her aunt's hair, and cut M.N.'s hair while she was asleep. J.B. has set fires to toilet paper and plays with candles, lighters and heaters. According to M.N., "you have to keep a 24-hour watch on her" because "she cuts anything" and "she'll burn anything." M.N. also stated that, although she was a "normal," "innocent" little girl before this incident, she now engages in inappropriate sexual behavior and seeks to dress "seductively." M.N. testified that she and J.B. have suffered because of the Defendant's actions, and that they both needed extensive counseling as a result of the Defendant's sexual conduct with the child.
The child's grandmother, R.H., testified that since this incident J.B. has been angry and hurt and does not know how to express it. R.H. stated that the child has been expressing these emotions in inappropriate ways, such as tearing up things and screaming at everyone. J.B. can not play harmoniously with other children and must be constantly supervised. R.H. noted that the child "already has a life sentence" because "she will live with that for the rest of her days." R.H. felt that "defendant should get every day that he can get in prison so that he can never, ever, ever do this to anybody ... again." She also testified the Defendant should never get out of jail or be allowed to be around children.
The trial judge gave the following extensive reasons prior to sentencing:
THE COURT:
The Court accepts as a factual basis the jury finding the Defendant guilty of the charge of attempted aggravated rape and the charge of attempted aggravated crime against nature. The Court is aware of the fact that the Defendant, in mitigation of certain circumstances, the Defendant did take the stand. He did not totally deny the incident. He did admit in the presence of the jury some inappropriate conduct, as he put it, with regard to the female victim.
And I also take into account the fact that he is 18 years old at this time. I understand he has no prior significant criminal history, either as a juvenile or as an adult. However, the Court must always be mindful, and must be mindful in this case of the fact that regardless of how young you were, I have to take into account, I have to consider that you should have known. You should have known that when you're dealing with a five-year old child, that this is just not normal, it's not natural, it's not appropriate, it's not right. A five-year old girl. That's who you destroyed.
If they had their way, they think you should get a death penalty. That's what they want. Because in all fairness, in all fairness to the victim in this case, you killed her. You essentially took her life away. You took her childhood away. Listen to what they're saying. They're saying that a four year old girl now acts like a provocative woman. Now she has no childhood. In other words, she doesn't do things or play with things that little normal girls play with. Now she wants to go out and engage in improper touching or expose herself.
Now, unfortunately, we have to look at what's going to happen to this poor *39 child down the road; what happens to her down the road. That's a result of conduct that you engaged in. She doesn't know any better. She doesn't know things like that are inappropriate at four and five years old. You do. Seventeen years old is certainly old enough to know that you don't do those sorts of things with a four or a five year old child.
I have to also take into account that the State proved their case to this jury, in my opinion, beyond a reasonable doubt. This jury could have very well come back with the charge of aggravated rape, and I could sentence you to a life sentence.
I have to conclude that what the jury decided, what the jury told this Court, was that they did not want you to be sentenced for the balance of your natural life. That's essentially the message they sent to me by finding you guilty of a lesser charge. Because there is no question that the State proved their case. There's no question that this was not an act which was, in fact, consummated, that is there was the contact between your genital organs and the genital organs of the child. So there is no question that the act was, in fact, consummated, and the jury gives you some consideration, simply because they want you not to serve a life sentence.
But I have to tell you, there can be very, very little consideration given in connection with this case, very, very little consideration. I am very, very sorry for these circumstances.
This is a tragic situation, because, unfortunately, because you ruined the life of a small child, I now have to take away a significant portion of your life. I am very sorry for doing that. It's a very difficult thing to do that to an 18-year old boy, because that's all you are, is an 18-year old boy who made a colossal mistake, that you certainly should have known better about. You should have known better.
The trial judge considered both mitigating (i.e., defendant's age and lack of a prior record) and aggravating factors (i.e., seriousness of the offense, the age of the victim, immediate and long term impact of the incident on the child and her family) in sentencing the Defendant, in compliance with La.C.Cr.P. art. 894.1. Although, the Defendant argues that this was a "one-time occurrence," he admitted that he engaged the victim in sex five to ten times over a period of two weeks. Contrary to the Defendant's assertions that the trial judge misconstrued the jury verdict and victim impact testimony, the trial judge's extensive reasons indicate a full understanding of the jury's findings in returning a lesser verdict than aggravated rape (which carries a mandatory life sentence). He was also fully aware, from the testimony of the relatives of the victim, that they wanted the Defendant to receive the harshest sentence possible. The trial judge then, complied with the sentencing provision of La.C.Cr.P. art. 894.1.
We find that the sentence is constitutional. The Defendant was the child's babysitter and was in a trust relation with the five-year-old victim. By his own admission, he engaged in sexual relations with the child five to ten times over a two-week period. He also admitted that, on at least two of those occasions, he penetrated the child's anus with his penis. He admitted engaging the child in oral sex. He also stated that he invited his eight year old brother to engage in sex with the child. In addition, the child testified that the Defendant engaged in vaginal intercourse with her and sought to secure her silence by threatening her. As evidenced by the impact statement of the child's mother and *40 grandmother, this incident has caused both immediate and long-term psychological effects for this child. Therefore, considering the facts and circumstances of this case, we find that the sentencing judge did not abuse his wide discretion in sentencing the Defendant to imprisonment for 45 years for this offense.
Finally, the Defendant argues that maximum sentences are reserved for the worst criminal and, thus, he should have received a lesser sentence. However, the Defendant did not receive the maximum sentence. Hence, this argument has no basis in fact. The facts of this case support the sentence imposed and reflect the seriousness of the offense.

INEFFECTIVE ASSISTANCE OF COUNSEL
The Defendant also argues that his counsel was ineffective for failing to ask the trial judge to reconsider the sentence. However, we have reviewed the sentence despite counsel's failure to object to the sentence. Thus, the issue is moot.[4] Furthermore, the Defendant has failed to show any prejudice, as required for a claim of ineffective assistance of counsel to succeed.

ERROR PATENT
The record was reviewed for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find two patent errors.
The Defendant was convicted of two sex offenses, as defined in La.R.S. 15:541(14.1).[5] La.R.S. 15:542 sets out registration procedures for sex offenders to follow and La.R.S. 15:543(A) requires the trial judge to provide written notification *41 to a sex offender defendant of the registration requirement of La.R.S. 15:542. Here, the trial judge failed to provide the required written notice to the Defendant. Consequently, we will instruct the trial judge to inform the Defendant of the registration requirements of La. R.S. 15:542 by sending appropriate written notice to him within ten days of this opinion, and to file written proof in the record that the Defendant received such notice. See: State v. Stevenson, 00-1296 (La.App. 5th Cir.1/30/01), 778 So.2d 1165.
In addition, the trial judge failed to advise the Defendant of the two year prescriptive period for filing for post-conviction relief, in accordance with La. C.Cr.P. art. 930.8A. Thus, we will remand the case with an order for the trial judge to send written notice to the Defendant of the prescriptive period for filing an application for post-conviction relief, along with a notice of when the period begins to run, within ten days of the rendering of its opinion, then to file written proof in the record that the Defendant received the notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, the Defendant's convictions and sentences are hereby affirmed. The case is remanded for the trial judge to send written notice to the Defendant of the prescriptive period for filing an application for post-conviction relief, along with a notice of when the period begins to run, and further for the trial judge to send written notice to the Defendant of the sexual offender registration requirements of La. R.S. 15:542. Both notices are to be sent within ten days of this opinion and written proof is to be filed in the record that the Defendant received such notices.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED FOR NOTICE OF THE PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF AND FOR NOTICE OF SEX OFFENDER REGISTRATION REQUIREMENTS.
NOTES
[1] Both sentences are without benefit of parole, probation, or suspension of sentence, with credit for time served
[2] In accordance with La.R.S. 46:1844, in order to protect the identity of the victim, who is a minor, her name and that of her mother will be referred to by the use of initials.
[3] Defendant does not allege that his sentence for attempted crime against nature is excessive.
[4] A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffective assistance of counsel, the courts apply a two-pronged test. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5th Cir.4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious that it deprived the defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5th Cir.7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.

In order to show prejudice, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; Soler, 636 So.2d at 1075. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Addison, 00-1730, p. 11 (La.App. 5th Cir.5/16/01), 788 So.2d 608, 615.
Claims for ineffective assistance of counsel are most appropriately addressed through application for post-conviction relief, so as to afford the parties an adequate record for review. Peart, 621 So.2d at 787. However, the Court can address the issues if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal. State v. Hamilton, 92-2639, p. 4 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Pendelton, 00-1211, p. 10 (La.App. 5th Cir.3/14/01), 783 So.2d 459, 465-466.
[5] In Acts 2001, No. 1206, the legislature moved the definition of sex offender from R.S. 15:542(E) to R.S. 15:541(14.1).