MARION F. EDWARDS, Chief Judge.
12Pefendant/appelIant, Daniel Joseph Blank (“Blank”), was charged by grand jury indictment with the first degree murders of Joan Brock, Luella Arcuri, and Salvador Arcuri in violation of La. R.S. 14:30 A(1). The arrest and charges came after an investigation of several home invasion crimes, including several murders that occurred in the River Parishes in 1997.[1] Officials from St. John the Baptist, Ascension, and St. James Parishes, the city of Gonzales police officers, and agents from the New Orleans FBI joined forces to form a task force for the investigation. The investigation led the task force to Blank, who was living in Onalaska, Texas.
*7 Several members of the task force trav-elled to Texas, where they found Blank at his place of employment. Blank agreed to accompany officers to the Onalaska Courthouse Annex where he was questioned by task force members about his spending and gambling habits and his income. Later the officers [..¡questioned Blank about the home invasions, armed robberies, murders and attempted murders.
Blank was ultimately charged with several crimes, including the first degree murder of Lillian Philippe, for which he was tried, convicted, and sentenced to death. His direct appeal to the Louisiana Supreme Court resulted in an affirmation of that conviction and sentence.[2] Blank also pled guilty to the murders of the Arcuris and Barbara Bourgeois,[3] and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each of those counts.
The matter before this Court in this appeal is the conviction on the guilty plea entered by Blank to the murder of Joan Brock. Blank brings this appeal pursuant to State v. Crosby,[4] which allows a review of the trial court’s denial of Blank’s motion to suppress the confession.
The known facts of this crime are limited due to Blank’s guilty plea. However, Blank admitted to killing Joan Brock during the perpetration of an aggravated burglary at her home on Somerset Drive in LaPlace on May 14,1997.[5]

LAW AND DISCUSSION

Blank argues that the trial court erred by denying his motion to suppress the statements made at the Onalaska, Texas Courthouse during the lengthy interrogation by task force officers. Blank asserts that his statements were not voluntary and should have been suppressed, because no reasonable person would have felt free to terminate the interrogation and leave. Blank further asserts he was |4incapable of waiving his rights and making a statement because of the emotional distress to which he was subjected during the interrogation.
In support of the motion to suppress in the trial court, Blank made several allegations relating to the interrogation as follows:
1. He asserted that he was unlawfully seized and arrested without probable cause;
2. He was interrogated for about twelve hours without food, drink, or cigarettes or sleep;
3. He believed he would only be free to leave if he confessed;
4. His confession was coerced because police officers told him he would be better off if he confessed, and because they falsified the results of a polygraph test;
5. He was psychologically manipulated into confessing;
6. His mental capacity was such that he did not make a knowing, intelligent, and voluntary waiver of his constitutional rights;
*8 7. His emotional state deprived him of the ability to adequately give a voluntary confession; and,
8. His confession was constitutionally infirm because he did not receive ■ sufficient Miranda warnings.
In a written Judgment with Reasons, the trial court rejected all of the above allegations and denied the motion to suppress the confession.
The State argues that all of the assertions regarding the motion to suppress on review in this appeal have been considered and rejected by either this Court or the Louisiana Supreme Court in prior appeals and are without merit. The State makes a valid point. Blank has attacked the ruling on the motion to suppress in prior appeals. His arguments have been addressed and rejected by either this Court or by the Louisiana Supreme Court in prior appeals of murder convictions resulting from other murders to which Blank confessed during this interrogation.[6]
Blank acknowledges that fact. However, he asserts that two claims relating to the motion to suppress are still viable and should be considered by this Court. He asserts that he was not free to leave the interview and that he was made to Uunderstand that he would be interrogated until he confessed. Blank also contends he was emotionally incapable of giving a valid waiver of his rights and of giving statements.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[7] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menace, threats, inducement, or promises.[8] A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstance of each situation.[9] The trial judge must consider the totality of the circumstances in deciding whether the confession is admissible.[10] The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.[11]

FREEDOM TO LEAVE

Blank argues that a group of four Louisiana and Texas law enforcement officers showed up at Blank’s workplace and transported him by police car to the courthouse for questioning where he was confronted by several other officers and questioned for hours. Blank acknowledged that his immediate needs were met, but he asserts it remained clear that if he wanted a drink, a smoke, or a bathroom break he could only get it with permission of the *9 officers. Blank argues that under the | (¡circumstances no reasonable person would have felt at liberty to terminate the interrogation and leave.
Blank readily agreed to go to the Ona-laska Courthouse with task force officers when they came to his workplace on the day of the interrogation and was taken to the courthouse where he was questioned for about twelve hours. After the first three hours answering questions about his spending habits and denying any involvement in the murders, Blank agreed to take a polygraph test that lasted about two and a half hours. After the interview, there was a bathroom break. Then Detective Todd Hymel, one of the members of the task force, entered the room and gave a long, solemn speech frequently referencing Blank’s recently deceased mother. The detective calmly appealed to Blank to do the right thing and take responsibility for his actions. Blank responded and confessed to the murder of Joan Brock and then later to the other murders.
The issue of whether Blank was in custody during the interrogation has already been addressed by the Louisiana Supreme Court in that Court’s review of Blank’s conviction and death sentence for the murder of Lillian Philippe.[12] In that case, Blank argued that the trial court erred when it denied the motion to suppress because Blank was arrested at his place of employment without probable cause. The Louisiana Supreme Court found that the trial court correctly concluded that Blank was not in custody when he voluntarily agreed to accompany the officers to the station.[13] The supreme court stated that the two officers who went to Blank’s automotive shop testified that Blank agreed to accompany them to the police station to answer questions and that he was free to leave before confessing to the |7crimes.[14] The Court noted that Blank was not given Miranda warnings at his place of employment nor was he handcuffed while he traveled to the station in the front passenger seat of the vehicle.[15]
Additionally, the Louisiana Supreme Court remarked that at the outset of the interrogation, Detective Hymel advised Blank that he was not under arrest and did not want Blank to misunderstand. Blank responded he was not worried about that.[16] After consideration of the circumstances and the applicable law, the supreme court concluded that this exchange demonstrated that Blank voluntarily accompanied the officers to the station and that he failed to show that he had been arrested on less than probable cause.[17]
The supreme court again stated later in its opinion that Blank was told at the outset of the interview that he was not under arrest, and it found that the circumstances of the interview demonstrated that his presence at the sheriffs substation was entirely voluntary.[18]
In that same case, in a related issue, Blank contended that, given the length of the interrogation, he lacked the capacity to give a voluntary statement.[19] The supreme court found that nothing suggested that the duration of the interrogation, *10 without more, rendered it involuntary.[20] Officers administered Miranda warnings nine times during the interrogation, and Blank made several trips to the restroom and drank sodas throughout the interrogation. The supreme court remarked that, although Blank expressed weariness, stated that he was cold, and indicated that he was suffering from back pain intermittently throughout the lengthy interview, he never requested to terminate the interrogation nor did he ever invoke any of his | sMiranda rights. In these circumstances, the supreme court concluded that Blank did not demonstrate coercion resulting from the protracted duration of the interrogation.[21]
The transcript of the motion to suppress hearing is contained in the record on appeal. In it Detective Toney testified that Blank did not indicate he wished to leave and discontinue the interview, and Blank was free to leave until he started confessing. The detective maintained that, if Blank had asked to leave, up until the time he confessed to murder, he would have been free to leave. Detective Toney again asserted during cross-examination that Blank was not in custody and was there for an interview. Detective Todd Hymel and Lieutenant Mike Nettles also testified that Blank was free to leave during the interrogation.
At the suppression hearing, Blank offered Dr. Mark Vigen, an expert psychologist, who testified that he interviewed Blank and reviewed the videotapes of the interrogation and the transcript of it. It was the doctor’s belief that Blank thought he was in custody during the interrogation.
The interrogation transcript is also contained in the record. That transcript corroborates the officers’ testimony. At one point in the interrogation, Blank asked Detective Hymel if he was going to be arrested if he refused to take the polygraph test, and Detective Hymel responded that he was not under arrest. At another point, Blank told Agent David Sparks that it looked like he (Blank) was being charged with something he did not know anything about. Agent Sparks then asked Blank if he had been charged with anything, and Blank replied negatively.
Under the circumstances of this case, we find no merit in Blank’s argument that he was unlawfully detained. Blank voluntarily accompanied the officers to the courthouse annex for questioning. When they arrived at the courthouse annex, the | ^officers told Blank he was not under arrest, and they advised Blank of his rights. Blank waived his rights and agreed to answer questions without a lawyer present. Before the polygraph test was administered, Blank was again advised he was not under arrest. He made several toips to the restroom and drank sodas throughout the interrogation. Although he made complaints of being tired and cold and having back pain, Blank did not invoke his Miranda rights or request to terminate the interrogation. Additionally, we find these arguments have already been addressed and rejected by the Louisiana Supreme Court.

EMOTIONAL STATE

Blank also contends that the trial judge erred by denying his motion to suppress on the basis that he (Blank) was incapable of waiving his rights and giving statements because of the emotional distress he sustained during the interrogation. He notes that Dr. Vigen described him as an illiterate and easily manipulated individual who was confronted by multiple law enforcement officers and then taken to *11 a strange office for interrogation where, over the course of many hours, he finally broke down. Blank asserts that, under the circumstances of this case, the emotional stress upon him was sufficient to vitiate his consent, contrary to the trial judge’s belief. He directs this Court’s attention to Paragraph 9 in his motion to suppress.
In Paragraph 9 of his motion, Blank argued that the videotaped interrogation showed that he collapsed from fatigue several times during the interrogation, and immediately prior to making any admissions, he collapsed and began crying when officers “had him seven hours into the interrogation and began mentioning his deceased mother to him.” In his order denying the motion, the trial judge found that the ease law was clear that mere emotional distress was not grounds for rendering a confession inadmissible. The trial judge stated that emotional distress, hnsuch as crying or sobbing, had already been held as insufficient grounds “to constitute a confession as constitutionally infirm.”[22] He said that he had viewed the videotapes of the confession, and Blank was not seen to collapse at any point. The trial judge further stated that, while emotions might have “run high” at various separate moments, he did not see what could be characterized as a severe emotional state capable of rendering a confession inadmissible. Consequently, the trial judge concluded that Blank’s allegation lacked merit and that the confession should not be suppressed on that basis. Blank raised similar claims in both prior appeals.[23]
In his earlier appeal to this Court, Blank alleged that the detectives coerced him into confessing by the repeated mention of his deceased mother.[24] This Court stated that, during the interview, the detectives explained to Blank that his deceased mother would want him to take responsibility and admit to the crimes. At that point, Blank broke down and began to cry. Thereafter, Blank admitted to his involvement in the crimes. This Court found that the repeated references to Blank’s deceased mother and the suggestion to tell the truth and take responsibility for his actions did not make the confession inadmissible. This Court noted that the detectives did not threaten or promise Blank anything in reference to his mother in obtaining the confession.[25]
In his appeal to the Louisiana Supreme Court, Blank claimed that mental and physical distress during the interrogation caused him to confess to the offenses involuntarily.[26] He also claimed that the officers coerced his confession by making Inseveral references to God, religion, and his deceased mother. The supreme court stated that its review of the videotapes and the verbatim transcript did not show the officers exercising any type of coercion which would at all indicate that this confession was involuntary.[27] As to the references to Blank’s deceased mother, the supreme court found that appeals to a defendant’s emotions and/or religious be *12 liefs typically do not render an ensuing confession involuntary.[28]
This issue has been presented for review by Blank in two prior appeals, one in this Court and one in the Louisiana Supreme Court. In both opinions, the allegations were found to be without merit. We hold that to be true in the instant case. Accordingly, we find no merit in this argument.
On a review for errors patent on the record,[29] we find that the transcript shows that the trial judge sentenced Blank to life imprisonment without benefit of parole, probation, or suspension of sentence. He neglected to state that the life sentence would be served at hard labor as mandated by La. R.S. 14:30. It is noted that the trial judge did advise Blank during the guilty plea colloquy that he would be sentenced to life imprisonment at hard labor; however, the guilty plea form only shows that Blank would be sentenced to life imprisonment. It is also noted that the minute entry/commitment dated July 9, 2009, also reflects that the trial judge neglected to state that the life sentence would be served at hard labor.
The failure by the trial judge to state that the sentence was to be served at hard labor, where the commitment accurately reflected the sentence to be served, is not an error requiring corrective action by this Court where there is no discretion in | ^sentencing.[30] However, we remand the matter and instruct the trial court to amend the minute entry/commitment dated July 9, 2009, to reflect that Blank’s life sentence is to be served at hard labor and to transmit the amended minute entry/commitment to the officer in charge of the institution to which Blank has been sentenced.[31]
We hereby affirm Blank’s conviction and sentence, and we remand the matter with instructions to the trial court to amend the commitment and transmit the amended commitment to the officer in charge of the institution to which Blank has been sentenced, in accordance with the holdings in this opinion.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

. The force was also investigating the home invasions and murders of Victor Rossi, Barbara Bourgeois, Lillian Philippe, and the armed robberies and attempted murders of Leonce and Joyce Millet.

. State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).

. It does not appear that an appeal was taken from the guilty plea relating to the Arcuris; however, this Court has affirmed the plea to the murder of Ms. Bourgeois in State v. Blank, 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132.

. 338 So.2d 584 (La.1976).

. It appears from the minute entries that Blank was tried and convicted on the murder of Joan Brock in 2000 but was granted a new trial on August 14, 2006. The reason for the grant of the new trial is not clear from the record before this Court.

. State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007) and State v. Blank, 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Miranda, supra; State v. Comeaux, 93-2729, p. 47 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); State v. Watts, 98-1073, p. 5 (La.App. 5 Cir. 5/19/99), 735 So.2d 866, 869.

. State v. Watts, 735 So.2d at 869.

. State v. Serrato, 424 So.2d 214, 221 (La.1982); State v. Shepherd, 449 So.2d 1120, 1123 (La.App. 5 Cir.1984).

. Id.

. State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).

. Id. at 102.

. State v. Blank, 955 So.2d at 102.

. Id. at 102.

. Id.

. Id.

. Id. at 104.

. Id.

. Id. at 105.

. State v. Blank, 955 So.2d at 105-06.

. The trial judge cited State v. Robertson, 97-177 (La.3/4/98), 712 So.2d 8, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998) and State v. Harrison, 451 So.2d 69 (La.App. 4 Cir.1984), writ denied, 477 So.2d 1122 (La.1985) in support of his position.

. State v. Blank, 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132 and State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).

. State v. Blank, 804 So.2d 132.

. Id. at 138-39.

. State v. Blank, 955 So.2d 90.

. State v. Blank, 955 So.2d at 107.

. The Louisiana Supreme Court cited Johnson v. Trigg, 28 F.3d 639, 644-45 (7th Cir.1994) (confession voluntary even though fourteen-year-old defendant of below average intelligence saw police arrest terminally ill mother before confessing). State v. Blank, 955 So.2d at 108.

. This Court conducts a routine review for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request.

. State v. Laviolette, 06-92 (La.App. 5 Cir. 9/26/06), 943 So.2d 527, writ denied, 06-2585 (La.5/18/07), 957 So.2d 149.

. See, State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).