847 So.2d 200 (2003)
STATE of Louisiana, Appellee,
v.
Cedric HOLLOWAY, Appellant.
No. 37,021-KA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2003.
*204 Paula Corley Marx, Louisiana Appellate Project, Lafayette, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Edward M. Brossette, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before BROWN, GASKINS and MOORE, JJ.
GASKINS, J.
The defendant, Cedric Holloway, was tried before a jury on a charge of possession of cocaine. He was convicted of attempted possession of cocaine, adjudicated a habitual offender, and sentenced to 20 years at hard labor, without benefit of probation, parole or suspension of sentence. The defendant's conviction and adjudication as a habitual offender are affirmed; his sentence is affirmed as amended.

FACTS
At about 9 p.m. on January 14, 2000, members of the Shreveport Police Department's Street Level Interdiction Unit ("SLIU") conducted a sweep of the 900 block of Pickett Street. This action was in response to citizens' complaints about drug activity in the area. The SLIU did not have information about specific individuals.
First, Agents Jerry O'Glee[1] and Jerry Silva were dropped off by another agent and took up positions in an alleyway behind a row of houses. Their purpose was to cover any exits or routes of escape of individuals that would run from the police once they knew that the police were in the area. Next, Agents Derrick Brown and Jason Brook entered the area in a semi-marked police vehicle. This was the "wing" car, going in with the purpose of having people run from it, towards the waiting officers.
When the defendant and another man saw the car with Agents Brown and Brook, they immediately went into the alley between two houses, out of the sight of the agents in the car. From their places in the alleyway, Agents O'Glee and Silva observed the defendant and the other male, running or walking[2] around the back of a house towards them. The two men were about six feet apart. When the defendant was approximately 15 to 20 yards from Agents Silva and O'Glee, Agent Silva turned around to check the rear to make sure no one was coming at the officers from behind. Agent O'Glee continued to watch the defendant. At that point, Agent O'Glee saw the defendant toss a plastic baggie towards the back corner of one of the houses. Agents O'Glee and Silva then made their presence known and detained the men.
When Agents Brown and Brook joined them, Agent O'Glee told Agent Brown about the defendant tossing something. *205 Agent Brown went to the area indicated by O'Glee to search for the item thrown down by the defendant. The ground was moist from beer and urine, and the area was littered with empty beer bottles and empty plastic narcotics baggies. Although the lighting was not good, the agents testified that it was lit well enough to see without a flashlight, except for the immediate area directly underneath the house. At the corner brick post of one house, Agent Brown found a baggie containing two rocks that appeared to be crack cocaine. The baggie was relatively clean, indicating to Agent Brown that it had been on the ground only a short time. The defendant was placed under arrest, advised of his Miranda rights, and escorted to the police car. The other male was searched; since nothing illegal was found on him, he was allowed to leave.
After the defendant was placed in the police car, Agents Brown and Brook interviewed him. Agent Brown testified that the defendant made a post-Miranda statement, saying that he wanted to see if he could get help from the officers. Agent Brown told the defendant that if the defendant told him what he knew, "I'll see what I can do for you." At that point, the defendant stated that he had purchased the cocaine earlier that day from a residence on East 64th Street in Shreveport. The agents asked the defendant to show them the residence to determine if the information was valid. The defendant then recanted his statement and stated that he didn't want to help. The interview was terminated, and the defendant was taken to the city jail.
The defendant was originally charged by bill of information with possession of cocaine with the intent to distribute. In an amended bill of information, he was charged with second offense possession of a Schedule II, controlled dangerous substance, in violation of La. R.S. 40:967(C) and 40:982. Finally, in another amended bill of information, he was charged with possession of cocaine.
The defendant filed a multitude of pro se motions. They included a "motion to quash/dismiss," four "motion[s] to suppress evidence," two "motion[s] to quash the arrest" and a "motion for criminal records and pending charges of all state's witnesses." Most of these motions argued that the police actions in the sweep that had resulted in the defendant's arrest were illegal.
On December 7, 2000, an evidentiary hearing was held on the defendant's pro se motions. The defendant, instead of his counsel, cross-examined the state's witnesses, and argued the motions to the judge. Other than to state that the defendant had no witnesses and that he had shared the discovery received from the state with the defendant, the defendant's counsel remained silent during the hearing. The defendant's motions were denied.
On January 8, 2001, a free and voluntary hearing was held at the state's request regarding the defendant's postarrest statement to Agents Brown and Brook. At this hearing, the defendant's counsel cross-examined the witnesses and argued the matter to the trial court. Agent Brown testified on behalf of the state. He stated that after the defendant had been arrested for possession of cocaine, he told Agents Brown and Brook that he had bought the cocaine from a house on East 64th Street. He also testified that the defendant was not under any fear, duress or intimidation at the time of the interview. The trial court found the defendant's postarrest statement to be free and voluntary.
On January 9, 2001, the defendant was tried before a jury, which found him guilty of the responsive verdict of attempted possession *206 of cocaine. On January 12, 2001, the defendant filed motions for new trial and for postverdict judgment of acquittal.
On January 16, 2001, the state filed a habitual offender bill of information, alleging the defendant to be a fourth felony offender. The defendant pled not guilty.
The defendant filed additional pro se motions. These included a "motion for mistrial," and four motions to quash the habitual offender bill.[3]
On February 21, 2002, the trial court held a multiple offender hearing. The defendant was present, represented by new appointed counsel.[4] First, the trial court considered and denied the defendant's motions. The state called Sgt. Owen McDonnell of the Caddo Parish Sheriff's Office, who was accepted as an expert in fingerprint comparison and analysis. Sgt. McDonnell fingerprinted the defendant prior to testifying. He testified that the fingerprints on the bills of information from previous convictions were the same as the defendant's fingerprints. The trial court took the matter under advisement.
On April 16, 2002, the trial court adjudicated the defendant to be a fourth felony offender. In the same hearing, the defendant was sentenced to a hard labor sentence of 20 years, without benefit of probation, parole or suspension of sentence, with credit for time served. The defendant was also ordered to pay all costs, and in lieu thereof to serve 10 days in the parish jail. This sentence, in lieu of costs, was to run concurrent with the hard labor sentence.
On April 18, 2002, the defendant filed a motion to reconsider the sentence, which was denied by the trial court. On May 13, 2002, the defendant filed a pro se notice of intent to appeal. On May 14, 2002, the defendant's trial counsel filed a motion for out-of-time appeal, which was granted by the trial court.

SUFFICIENCY OF EVIDENCE FOR ATTEMPTED COCAINE POSSESSION
In this assignment of error, the defendant argues that the evidence presented by the state was insufficient to support his conviction for attempted possession of cocaine. In particular, he points to the poor lighting and the presence of another person when the item was allegedly discarded by the defendant.
In pertinent part, La. R.S. 40:967(C) provides:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
La. R.S. 14:27(A) provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his *207 object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
When issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first address the sufficiency of the evidence claim. State v. Hearold, 603 So.2d 731 (La.1992); State v. Sharp, 35,714 (La. App.2d Cir.2/27/02), 810 So.2d 1179.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Sharp, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Sharp, supra; State v. Mackens, 35,350 (La.App.2d Cir.12/28/01), 803 So.2d 454, writ denied, XXXX-XXXX (La.1/24/03), 836 So.2d 37.
When circumstantial evidence forms the basis for conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when viewing the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Mackens, supra. This is not a separate test from Jackson v. Virginia. State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488.
The state proved, beyond a reasonable doubt, that the defendant had the specific intent to possess cocaine, and that the defendant did an act tending directly toward possessing cocaine. La. R.S. 14:27 and La. R.S. 40:967(C). The state adduced eyewitness testimony that the defendant threw down a baggie that was determined to contain cocaine. Additionally, the defendant admitted to the arresting officers that the cocaine was his. The defendant put on evidence as to the littered nature of the area in which the baggie was found. But the testifying officers explained that the baggie found was relatively clean and not muddy compared to everything else in that immediate area. The officers also testified that the lighting was adequate for observing the defendant's actions and that the person with the defendant did not throw the object in question.
Viewing the evidence in the light most favorable to the prosecution, any rational jury could have concluded that the state established the essential elements of the crime of attempted possession of cocaine beyond a reasonable doubt.
This assignment is without merit.

*208 MOTION TO SUPPRESS
The defendant argues the trial court should have suppressed the defendant's postarrest statement as involuntary, that his arrest was illegal, and that all evidence resulting from that illegal arrest should have been quashed.
At the outset, we note the unusual procedural posture pertaining to this assignment of error. The only motions to suppress were pro se filings by the defendant, not his defense counsel. The defendant's pro se motions to suppress argued that his arrest was illegal and consequently the evidence flowing from that arrest should be excluded. At the hearing on the motions to suppress, the defendant's statement to the police was mentioned in passing. The issue of the voluntariness of the defendant's statement to the police was raised at a free and voluntary hearing initiated by the state and held the day before the trial. Since the defendant made no assignment of error as to the trial court's ruling at the free and voluntary hearing, the state argues that this court should deem the issue of the admissibility of his statement to the police as waived. However, out of an abundance of caution and in the interest of justice, we will treat the issue as properly raised and consider it.

Statement to police
The defendant contends that his statement was involuntary because it was made in response to inducements by the officers.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985). Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App.2d Cir.10/4/96), 681 So.2d 1023.
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. State v. Morvant, 384 So.2d 765 (La.1980). A remark by the police telling the defendant that the officer will "help" or "do what he can or things will go easier" will not negate the voluntary nature of the confession. State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 2000 1427 (La.5/11/01), 791 So.2d 1288; State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991). Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. State v. Vernon, 385 So.2d 200 (La.1980); State v. Jackson, 523 So.2d 251 (La.App. 2d Cir. 1988), writ denied, 530 So.2d 565 (La. 1988).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported *209 by the evidence. The appellate court places great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Roddy, supra.
A review of the record shows that the defendant was properly advised of his Miranda rights when he was arrested.[5] After he was placed in the police car, the defendant sought assistance from Agents Brown and Brook. Agent Brown indicated that he would see what he could do for the defendant if he told them what he knew. The defendant then informed them where he purchased the cocaine. Like the trial court, we find that the officer's remark did not negate the voluntary nature of the defendant's admission. We distinguish the facts of this case from a situation like that presented in State v. Hankerson, 604 So.2d 1330 (La.App. 1st Cir.1992), where the police actually made a promise to seek reduction in a sentence in return for the defendant's statement.

Illegal arrest
The defendant also contends that the trial court erred because it failed to grant his pro se motions to suppress and hold that his detention and arrest were illegal.
The Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. The police may not, therefore, make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct. State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); State v. Dobard, 2001-2629 (La.6/21/02), 824 So.2d 1127. Additionally, while the police may briefly detain and interrogate an individual in a public place, they may make such an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tucker, 626 So.2d at 710; Dobard, 824 So.2d at 1129-1130.
In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. Consequently, property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution. If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution. Tucker, 626 So.2d at 710; Dobard, 824 So.2d at 1130.
Even when an actual stop has not been effectuated, the Louisiana constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Tucker, 626 So.2d at 712.
*210 In the present case, the record indicates that the SLIU conducted an operation in the 900 block of Pickett Street, targeting the area-not the defendant. Agents O'Glee and Silva went into the area first. Next, Agents Brown and Brook drove down the street in a vehicle easily identifiable as a police car. The record does not indicate that Agents Brown and Brook chased the defendant. Agent Brown testified that as they drove down the street, they saw the defendant and another male walk to the back of a house. The defendant had walked out of sight before Agent Brown got out of his vehicle.
Agent O'Glee testified that as the defendant rounded the corner of the house, he saw the defendant toss away a clear plastic baggie. Agent O'Glee further testified that in his experience, it appeared very likely to him that the defendant was disposing of drugs. It was at that point that the police had a reasonable suspicion to detain the defendant and the other person for possible criminal activity. Once Agent Brown found the baggie containing suspected cocaine, the officers had probable cause to arrest the defendant.
As in Tucker, supra, the evidence does not show that the defendant was subject to an imminent stop before he tossed away the cocaine. It is clear that when Agents Brown and Brook drove down the street, they did not see the defendant engaged in any criminal activity. Instead, the defendant walked to the back of the house as the police car was driving down the street. Nothing in this action by the police forced or required the defendant to move to the back of the house. Also, the record does not show that there would have been an imminent stop of the defendant by either Agent O'Glee or Silva before the defendant abandoned the cocaine in Agent O'Glee's view.
This assignment of error is without merit.

HABITUAL OFFENDER ADJUDICATION
The defendant contends that the evidence was insufficient to sustain his adjudication as a habitual offender. In particular, he asserts that the state's introduction of only the minute entries in his prior convictions failed to prove that he was advised of his Boykin rights in those cases.
In its habitual offender bill of information, the state listed four felony convictions occurring between 1990 and 1997. At the subsequent adjudication hearing, the state introduced certified copies of the minutes of the guilty pleas and the fingerprinted bills of information on three of those prior convictions. The state then had the defendant fingerprinted at the hearing, and through the testimony of a fingerprint expert, established that the defendant was the defendant in these previous convictions:
(1) On 11/30/90, the defendant pled guilty to public intimidation, and was sentenced to time served in # 150,487 in the First Judicial District Court;
(2) On 3/13/95, the defendant pled guilty to possession of Schedule II CDS and was sentenced to two years at hard labor with credit for time served in # 172,500 in the First Judicial District Court; the original charge was possession of Schedule II CDS (cocaine) with intent to distribute;
(3) On 3/18/97, the defendant pled guilty to possession of Schedule II CDS (cocaine) and was sentenced to five years at hard labor with credit for time served in # 182,647 in the First Judicial District Court.
The minutes entries of these cases state that the defendant was informed of his *211 constitutional rights as per Boykin v. Alabama.
To obtain a multiple offender conviction, the state is required to establish both the prior felony convictions and that the defendant is the same person convicted of the offenses. Various methods are available to prove that the defendant on trial is the same person convicted of each prior felony offense, such as the testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of identical driver's license number, sex, race and date of birth. State v. Jackson, 31,433 (La.App.2d Cir.1/20/99), 726 So.2d 1061, writ denied, 99-2250 (La.12/17/99), 751 So.2d 876. The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. State v. Curtis, 338 So.2d 662 (La.1976); State v. Jackson, supra.
If the defendant denies the allegations of the bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. The state will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the state introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the state to determine whether the state has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993); State v. Robinson, 34,383 (La. App.2d Cir.2/28/01), 780 So.2d 1213, writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 642.
The trial court determined that the state carried its burden and presented sufficient information to show that the defendant was the man convicted of the prior felonies. The record in this case shows that the defendant was represented by counsel at each of the pleas. The minutes of each of the guilty pleas shows that the defendant was advised of his Boykin rights prior to the plea. The defendant chose to rest on the state's ability or inability to prove its case and offered no affirmative statement or documents to contradict the reasonable inferences from the evidence. We find that the trial court was not clearly wrong in its factual decision and thus, these convictions are valid for habitual offender purposes.
This assignment is without merit.

EXCESSIVE SENTENCE
In three assignments of error, the defendant complains of his sentence. As previously noted, the trial court imposed a sentence of 20 years at hard labor, which was the minimum mandatory sentence for him under the habitual offender law. Because the defendant raised only the issue of excessiveness in his motion to reconsider, our review as to his sentence is *212 limited to whether the sentence imposed is constitutionally excessive.[6] La.C.Cr.P. art. 881.1.
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. State v. Johnson, supra. To do so, the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson, 709 So.2d at 676. Additionally, in determining whether the defendant has met his burden, the trial judge must consider that the goals of the habitual offender law are to deter and punish recidivism. Johnson, 709 So.2d at 676-677. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the habitual offender law should occur only in rare instances. Johnson, 709 So.2d at 677.
La. R.S. 15:529.1 A(1)(c)(i), as it read on the date of the defendant's offense, subjected the defendant to a sentence of "a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life...." La. R.S. 40:967(C)(2) provides a sentence for possession of cocaine of not more than five years. The attempt statute, La. R.S. 14:27(D)(3), provides that the sentence "shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Accordingly, the minimum sentence the defendant could receive, as a fourth felony offender, was the 20-year sentence imposed by the trial court.
The defendant has failed to clearly and convincingly show that he is exceptional and that the court should have departed from the statutory minimum sentence. Accordingly, the imposed minimum sentence is presumed to be constitutional.
These assignments of error lack merit.

PAROLE ELIGIBILITY
The trial court sentenced the defendant to 20 years at hard labor, without benefit of probation, parole or suspension of sentence. The defendant and the state agree that the trial court erred in imposing sentence without benefit of parole. La. R.S. 15:529.1(G) provides that sentences imposed under the habitual offender provisions are to be imposed "without benefit of probation or suspension of sentence." As such, it was not within the trial court's authority to impose the sentence without benefit of parole, and the sentence is not legally correct. See State v. Miller, 96-2040 (La.App. 1st Cir.11/7/97), 703 So.2d 698, writ denied, 98-0039 (La.5/15/98), 719 So.2d 459.
*213 Accordingly, we amend the defendant's sentence to remove the restriction on parole eligibility.

CONCLUSION
The defendant's conviction for attempted possession of cocaine and his adjudication as a fourth offender are affirmed. His sentence is amended to allow parole eligibility.
CONVICTION AND ADJUDICATION AFFIRMED; SENTENCED AFFIRMED AS AMENDED.
NOTES
[1] This officer's name is spelled a variety of ways throughout the record, including "Ogley" and "Oglee." However, the agent signed an exhibit "O'Glee" and we consequently utilize that spelling.
[2] In various testimony, the defendant's movement was referred to as running, walking, a fast walk, or a brisk jog.
[3] In June 2001, the defendant filed a pro se application for a writ of mandamus with this court, seeking to require the trial court to rule on a motion for trial and suppression transcripts and to enforce an order requiring production of documents. We denied the writ application. State v. Holloway, 35,422 (La. App.2d Cir.7/3/01). In October 2001, another pro se writ application to this court was not considered due to failure to comply with the URCA. State v. Holloway, 35,766 (La.App.2d Cir.10/22/01).
[4] This counsel sought to withdraw on the basis that the defendant had lodged a complaint against him with the state bar association; the motion was denied.
[5] Although no evidence of the advisement of Miranda rights was adduced at the free and voluntary hearing, Agent Brown testified at trial that he advised the defendant of his rights after he was placed under arrest and before he was escorted to the police car. As previously noted, we may consider evidence presented at trial. State v. Daniels, supra. (We also note that Agent Brown testified at the suppression hearing that the defendant was advised of his rights.)
[6] We note that in one of his assignments of error, the defendant argued that the trial court erred because there was no meaningful discussion of La.C.Cr.P. art. 894.1 factors during the sentencing. Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 553.