COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-350-CR


KENNETH WHITE                                                                   APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION [1]

------------
I. Introduction
        In six points, appellant Kenneth White appeals his conviction for
aggravated assault with a deadly weapon and subsequent punishment of
seventy-five years’ confinement with a $10,000 fine. We affirm.
II. Background
        On September 8, 2003, Diane Sanders had moved into her new
apartment and assembled her child’s bed with the assistance of White, with
whom she had lived for two or three months and known for eight months. 
Sanders and her seven-year-old daughter, T.A., then accompanied White to his
house to pick up a change of clothes. After retrieving his belongings, White
drove Sanders and her child from his house to Cobb Park on the southside of
Fort Worth. White pulled under an overpass in the park and, after walking
around to the rear of the vehicle, walked to the passenger side of his car and
pointed a gun at Sanders’s face. [2] When the child screamed at the sight of the
gun, Sanders said she was told to “shut her **** mouth up or he would shoot
them both.” Sanders was ordered to step out of the car and, as she stood
“bearhugging” her daughter, she was pistol-whipped on her back and arms and
accused of “messing with” the child’s father, which she denied. She did not
know what part of the gun was striking her, but was certain that it was the gun
and not just White’s hand. 
        Eventually the lights of another car could be seen approaching and White
ordered Sanders and her daughter back into the car. As White pulled his car
forward, Sanders opened the car door and considered leaping out but changed
her mind because “I got my baby in the car with me.” While the door was still
open, White pushed Sanders, causing her leg to drag along the ground next to
the automobile. At some point, White stopped the car, walked around to the
passenger side and put Sanders back inside the car. White drove back to his
house, with the gun on his lap, and when Sanders hesitated to exit the car at
his house, he warned her that he would shoot them both if they did not exit. 
Sanders then took T.A. into the house, the door being shut and locked behind
them by White. Once inside, White pulled the phones out of the wall and
continued to rave at Sanders as she and her child sat on the couch, his pistol
being placed on the freezer and accessible to him at all times. Finally, around
6 a.m., Sanders convinced White to let them go by telling him that her daughter
had to go to school. She went home and tried to treat her open wounds with
bath water and Epsom Salt. Sanders’s mother took her to the hospital, after
which she spoke to police. Photos of injuries to her kneecaps, forearm, foot,
and back were taken and introduced at trial. 
        After these events, White repeatedly called Sanders’s apartment at odd
times and threatened to kill her. T.A., who had been a high achiever in school,
failed school that year and was in counseling at the time of trial. [3] 
        White was charged in a one-count, two-paragraph indictment for
aggravated assault with a deadly weapon, and a jury convicted him of
paragraph one, aggravated assault with a firearm, [4] and acquitted him of
paragraph two, the use of a motor vehicle as a deadly weapon. He pleaded not
true to the repeat offender notice regarding a 1986 Louisiana conviction for
manslaughter, but the jury found the enhancement allegation to be true and
assessed his punishment at seventy-five years’ confinement and a $10,000
fine. This appeal resulted.
 
 
 
III. Prior Felony Conviction
A. The Pen Packet
        In his first two points, White first complains that the trial court erred in
entering his Louisiana penitentiary packet into evidence during the punishment
phrase of his trial and that the jury should therefore not have been able to
consider the enhanced range of punishment based on the prior felony
conviction. 
        At the beginning of the punishment phase of the trial, outside of the
presence of the jury, a hearing was held on the admissibility of State’s Exhibit
5. This exhibit was a Louisiana pen packet which contained documents
showing that Kenneth White was sentenced on August 25, 1986 to twenty-one
years, hard labor with the department of corrections for the June 28, 1986
killing of Alice Jackson in East Carroll Parish, Louisiana, a second degree murder
charge having been reduced to manslaughter. The packet consisted of several
documents, including:
(1) a Custodian of Records Affidavit from the Louisiana Department
of Public Safety and Corrections—Corrections Services at the
Office of Probation and Parole, indicating that the attached
documents are “true copies of the records of the Louisiana
Department of Public Safety and Corrections regarding Kenneth
White DOC: #114574.”
 
(2) a Dimunition of Sentence signed by the Warden of the Louisiana
Department of Corrections indicating Kenneth White, “dob:
1/15/59,” was “released in the same manner as if on parole” on
Nov. 5, 1996.
 
(3) a Statement of General Conditions under Which this Parole Is
Granted signed by Kenneth White, DOC: #114574 dated November
5, 1996.
 
(4) a Department of Public Safety and Corrections—Corrections
Services Master Record, containing personal data on Kenneth
White, dob 1/15/59, including parole information and his August
1986 sentencing for manslaughter.
 
(5) a Time Computation and Jail Credits form indicating Kenneth
White, DOC: #114574, was sentenced on August 25, 1986 to
twenty-one years’ confinement for manslaughter.
 
(6) a true copy of the Court Minutes from the Sixth Judicial District
Court Parish of East Carroll, Louisiana; indicating Kenneth White
pleaded guilty on August 25, 1986 to manslaughter and was
sentenced to twenty-one years’ confinement, in Docket No.
33148.
 
(7) a copy of the indictment charging Kenneth White, dob 1/15/59,
with unlawfully killing Alice Jackson.
 
(8) a Statement of Whether the Defendant Has Taken a Suspensive
Appeal, indicating Kenneth White had not taken a suspensive
appeal in Docket No. 33148.
 
(9) a Warrant of Commitment for Kenneth White, in Docket No.
33148, who was found guilty of manslaughter and sentenced to
twenty-one years’ confinement.
 
(10) the criminal record of Kenneth White, dob 1/15/59, indicating
he had been arrested twice, once for “simple battery” on December
2, 1979, and also sentenced to twenty-one years for manslaughter.
 
(11) two photographs of a Kenneth White, dob 1/15/59, DOC
#114574.

There are no fingerprints in the pen packet. 
        White’s counsel objected to the exhibit’s admission on the ground that
it did not meet the requirements of the Texas Code of Criminal Procedure. [5] We
construe this objection to complain that the pen packet did not prove White to
be finally convicted of a prior felony, as opposed to the “Kenneth White” in the
pen packet not being the same person who was on trial, which are different
objections. For example, White relies on Lavinge v. State, 64 S.W.3d 673
(Tex. App.—Houston [1st. Dist] 2001, no pet.), which noted that “The court
admitted the exhibits over appellant’s objection that they were insufficient to
show conviction of a crime or that they linked that conviction to appellant.” Id.
at 675 (emphasis supplied). The trial court in this case also remarked to the
prosecutor, “the objection hasn’t been made in front of me that you can’t link
the Defendant to the conviction. The objection was that you don’t have a valid
judgment and sentence.” Further, the potential identity objection may be
waived. 
Establishing this identity of parties is a procedural matter entailing
a question of conditional relevance. In other words, the relevance
of a prior conviction is conditioned upon the production of evidence
sufficient to show that the defendants are one and the same. If
such evidence is lacking but the court nevertheless admits the prior
conviction, the defendant must object.

Howard v. State, 896 S.W.2d 401, 405-06 (Tex. App.—Amarillo 1995, pet.
ref’d) (citations omitted). 
        Following a discussion about the pen packet, the trial judge commented
to the prosecutor, “show me a judgment and sentence, [6] please, and then we
will get on with it. If you don’t have a judgment and sentence, the rest of it is
not relevant.” A recess was taken, after which the trial court considered the
case of State v. Carter, 712 So.2d 701 (La. Ct. App. 1998). The court
observed that this case “sets out the requirements under Louisiana law for
establishing the existence of Defendant’s prior criminal record for enhancement
purposes; and I find that the State’s Exhibit 5 meets the requirements of
Louisiana law, of which I am taking judicial notice. The defendant’s objection
is overruled, and we will proceed.” [7] The prosecutor then read to the jury the
Repeat Offender Notice, containing the felony manslaughter conviction. The
Louisiana felony conviction enhanced White’s punishment range in this case
from that for a second-degree felony (two to twenty years) to that for a first-degree felony (five to ninety-nine years). Thus, without the conviction in
evidence, White’s maximum sentence would have been twenty years, fifty-five
years less than the seventy-five years he received.
B. Standard of Review
        We review the trial court's decision to admit or exclude evidence under
an abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex.
Crim. App. 2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v. State, 810 S.W.2d
372, 379-80 (Tex. Crim. App. 1990). The test for abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an appropriate
case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles, and the mere fact
that a trial court may decide a matter within its discretionary authority
differently than an appellate court does not demonstrate such an abuse. 
Montgomery, 810 S.W.2d at 391. We will not reverse a trial court's ruling on
the admission of evidence as long as the ruling is within the zone of reasonable
disagreement. Id. An appellate court will uphold the trial court’s ruling if it is
reasonably supported by the record and is correct under any theory of law
applicable to the case. See Brito Carrasco v. State, 154 S.W.3d 127, 129
(Tex. Crim. App. 2005); Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002). The review of the trial court’s ruling is made “in light of what was
before the trial court at the time the ruling was made.” See Carrasco, 154
S.W.3d at 129; Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).
C. Analysis
        The State alleged in its repeat offender notice in the indictment, and
therefore had the burden to prove, that White had a final prior conviction for
manslaughter. Therefore, “if it is shown [by the State] on the trial of a second-degree felony that the defendant has been once before convicted of a felony,
on conviction he shall be punished for a first-degree felony.” Tex. Penal Code
Ann. § 12.42(b). No required method of proof is set out in the statute. See
id. As previously noted, a judgment and sentence will suffice, or their
functional equivalent. See Mitchell v. State, 848 S.W.2d 917, 918-19 (Tex.
App.—Texarkana 1993, no pet.) (finding an abstract of judgment was the
functional equivalent of a judgment and sentence). 
        A prior conviction can be proven by the introduction of the “pen packet,”
which is the file from the penitentiary where the defendant was an inmate and
which contains the record of the inmate’s prior conviction. Cuddy v. State,
107 S.W.3d 92, 96 (Tex. App.—Texarkana 2003, no pet.); Barber v. State,
757 S.W.2d 83, 87 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d). A pen
packet from another state may be self-authenticating, without the need for
extrinsic evidence of authenticity, if it conforms with evidentiary rule 902(1),
that is, “bearing a seal purporting to be that of . . . any State . . . and a
signature purporting to be an attestation or execution.” Tex. R. Evid. 902(1). 
Here, the first page of State’s Exhibit 5 is an affidavit from the custodian of
records for the “Office of Probation and Parole of the Louisiana Department of
Public Safety and Corrections—Corrections Services.” The original of the
document appears to bear the official seal of the State of Louisiana. The
affidavit with accompanying documents are therefore self-authenticating. [8] See
Jones, 810 S.W.2d at 829 (noting that Kansas pen packets contained proper
certifications from custodian of records at Kansas Department of Corrections
with proper seals affixed thereto and holding that they were self-authenticated
and admissible without further proof under Rules 902(1) and 902(4)). The
State also implies that the documents were self-authenticating under Texas
Rules of Evidence 902(4). But Rule 902(4) requires the pen packet to have
been recorded or filed in a “public office,” which has not been demonstrated
under Louisiana law, and which appears undecided with respect to Texas pen
packets. See Reed v. State, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991). 
Examining the balance of the exhibit, certified by the custodian of records, we
note that it reflects in several documents that Kenneth White, dob 1/15/59, had
been adjudged guilty of the charge of manslaughter and sentenced to twenty-one years’ confinement in the Louisiana Department of Corrections. Further,
three documents—the court minutes, the statement of suspensive appeal, and
the warrant of commitment—appear to have originally been executed under
official seal, but the seals could not be copied. The attestations in these
documents that (1) White had been found guilty of a felony offense, (2) that he
had been sentenced to twenty-one years, and (3) that he had not appealed the
judgment and sentence, are sufficient to establish White’s prior felony
conviction. See Francis v. State, 792 S.W.2d 783, 785 (Tex. App.—Houston
[14th Dist.] 1990, pet. ref’d) (holding that commitment order from Criminal
District Court for the Parish of Orleans, Louisiana, referring to offense
committed and showing that defendant had been sentenced to twenty years in
Louisiana Department of Corrections, was sufficient to prove “as a matter of
law” that defendant had been previously convicted of a felony). Johnson v.
State, 740 S.W.2d 868, 872 (Tex. App.—Houston [14th Dist.] 1987, pet.
ref’d) (holding that pen packet from New York containing “certificate of
commitment” showing that the defendant was sentenced to New York
penitentiary, was sufficient to establish defendant’s prior New York felony
conviction “as a matter of law” under Texas law). 
        Likewise,
for an out of state pen packet to suffice in Texas as evidence of a
prior criminal record at the punishment phase of a trial, the State
must either prove or ask the trial court to take judicial notice of
what the sister state considers sufficient documentary proof of a
final conviction or the foreign documents must be the functional
equivalent of a Texas judgment.

Cox v. State, 931 S.W.2d 349, 355 (Tex. App.—Fort Worth 1996, no pet.). 
Pen packets or minute entries such as State’s Exhibit 5 have been held under
Louisiana law to be sufficient to prove a prior conviction. Carter, 712 So.2d at
709-10; see also State v. Holloway, 847 So.2d 200, 211 (La. Ct. App.)
(certified copies of minutes were sufficient), writ denied, 862 So.2d 558 (La.
2003); State v. Martin, 679 So.2d 557, 560-61 (La. Ct. App. 1996) (copy of
pen packet certified by records custodian of the Louisiana Department of
Corrections was sufficient), writ denied, 688 So.2d 498 (La. 1997); State v.
Evans, 506 So.2d 1283, 1285-86 (La. Ct. App. 1987) (minutes of court, or
other competent evidence, were sufficient).
        Further, at trial, even though the trial court did not consider the identity
of “Kenneth White” in the pen packet to be before him, in addition to the
introduction of Exhibit 5, Larry Downing, who was White’s supervising parole
officer in Louisiana testified that White had been convicted of manslaughter in
Louisiana and sentenced to twenty-one years’ hard labor. He identified White
as the same Kenneth White as referred to in State’s Exhibit 5 based on his
discussions with White, the information he gained as White’s parole officer, his
attendance at White’s parole revocation hearing, and the information contained
in Exhibit 5. Also, Jamie Gultrich, who took over as White’s parole officer
when Downing retired, testified that based on her review of the parole file,
including a different photograph from that contained in Exhibit 5, the
information and photographs in Exhibit 5, and her observations of White in the
courtroom, that White was the same individual described in Exhibit 5.
        In addition, Sanders also testified that White had been convicted of a
crime in another state because he had murdered his wife. White’s mother also
testified that he had been convicted of manslaughter in 1986 in Lake
Providence, Louisiana, sentenced to twenty-one years, and paroled to Texas.
White’s brother testified “I suppose I heard that” White shot Alice Jackson in
the back when she was pregnant. 
        Considering all of the foregoing, we cannot say the trial judge abused his
discretion by admitting State’s Exhibit 5. Therefore, points one and two are
overruled. 
IV. Mistrial
        In White’s third and fourth points, he complains that the trial court erred
by failing to grant a mistrial after sustaining a hearsay objection and, following
an improper punishment-phase jury argument by the prosecutor. 
 
 
A. Standard of Review
        The denial of a motion for mistrial, appropriate for “highly prejudical and
incurable errors,” is reviewed under an abuse of discretion standard. See
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting
Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)), cert. denied,
124 S. Ct. 2837 (2004). 
[T]he question of whether a mistrial should have been
granted involves most, if not all, of the same considerations that
attend a harm analysis. A mistrial is the trial court’s remedy for
improper conduct that is “so prejudicial that expenditure of further
time and expense would be wasteful and futile.” In effect, the trial
court conducts an appellate function: determining whether
improper conduct is so harmful that the case must be redone. Of
course, the harm analysis is conducted in light of the trial court’s
curative instruction. Only in extreme circumstances, where the
prejudice is incurable, will a mistrial be required.

Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The appropriate
test then for evaluating whether the trial court abused its discretion in
overruling a motion for mistrial is the test originally set out by the Texas Court
of Criminal Appeals in Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998), cert. denied, 526 U.S. 1070 (1999), applying the federal standard.         Under Mosley, in determining whether the trial court abused its discretion
in denying a mistrial, an appellate court must consider: “(1) severity of the
misconduct (the magnitude of the prejudicial effect of the prosecutor’s
remarks); (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge); and (3) the certainty of conviction absent
the misconduct.” Id. In the punishment phase context, these factors are
tailored as follows: “(1) the severity of the misconduct [prejudicial effect], (2)
curative measures, and (3) the certainty of conviction absent the misconduct
[likelihood of the same punishment being assessed].” See Hawkins, 135
S.W.3d at 77.
B. Application
        During the examination of retired parole officer Larry Downing in the
punishment phase of the trial, the prosecutor asked, “Did you learn from the
parolee that the victim in that offense, that he received a manslaughter charge
on was pregnant?” Downing answered, “No ma’am, that was through the
offense report.” This was immediately followed by a hearsay objection which
was sustained, and the jury was also instructed “to disregard the last answer
of the witness”; a motion for mistrial was denied. It is unclear if the mistrial
request was for mentioning pregnancy, manslaughter, or the offense report, but
since the latter two items were obviously previously discussed, and
“pregnancy” would be a hearsay issue, we will assume that was the subject of
the objection. While there is a presumption that an instruction to disregard
testimony cures any error with the testimony, this is not true “in extreme cases
where it appears that the question or evidence is clearly calculated to inflame
the minds of the jury and is of such character as to suggest the impossibility of
withdrawing the impression on their minds.” Campos v. State, 589 S.W.2d
424, 428 (Tex. Crim. App. 1979) (citing Evans v. State, 542 S.W.2d 139 (Tex.
Crim. App. 1976)). The question must also be obviously harmful to the
defendant. Bolden v. State, 504 S.W.2d 418, 420 (Tex. Crim. App. 1974). 
        Applying the Mosley factors, we first observe that the severity of the
misconduct was attenuated by the fact that essentially the same information
was later entered through another witness, [9] which cures any error in its
admission. Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).
Second, the jury was immediately admonished to disregard the comment and
the complained-of testimony was only a small part of the evidence adduced at
the punishment phase of the trial, making the court’s curative measure
effective. Finally, considering all of the testimony adduced at trial concerning
the occurrence, the certainty of punishment being assessed to White was great
considering that the State also proved that at the time of the assault, White
was on parole for manslaughter and had committed numerous parole violations
including use of marijuana, possession of a handgun, and committing another
criminal offense. Under these circumstances, we cannot say that the trial court
erred in failing to grant a mistrial after sustaining the hearsay objection. Point
three is overruled.
        During closing argument in the punishment phase, the prosecutor also
made the following statements:
Don’t give him bonus points because he didn’t pull the trigger this
time. He thought about what he was going to do to Ms. Sanders
long before September of 2003. You heard testimony that he had
pulled out that gun, lined up those bullets. This wasn’t a spur-of-the-moment thing. He knew what he was going to do. Different
states, same act. 

        This argument was followed by an objection that it was a misstatement
of the testimony, which the court sustained. The trial court also instructed the
jury to disregard the prosecutor’s last comment but overruled the defense’s
motion for mistrial. White complains that the statement “different states, same
act” was incurable jury argument because while the jury knew what happened
in the Tarrant County Case, it did not know any of the underlining details
concerning the Louisiana manslaughter conviction and whether it had been a
“spur of the moment thing.” 
        Again turning to the Mosley factors, we note that with regard to the
severity of the misconduct, the meaning of the prosecutor’s statement is
somewhat unclear. Obviously, the final act was not the same. Someone was
shot and killed in Louisiana and no one was killed or even shot in the Texas
incident. On the other hand, there are parallels between the two events, those
being offenses against women, with whom White had lived, and both involving,
a gun. 
        Further, essentially the same information had come into evidence from
other witnesses. Sanders had testified that White had been convicted of a
crime in another state because he had murdered his wife. White’s mother had
testified that he had been convicted of manslaughter in 1986 in Lake Province,
Louisiana, sentenced to twenty-one years, and paroled to Texas and, White’s
brother had testified that he had heard that White had shot Alice Jackson in the
back when she was pregnant. 
        Also, the jury had heard all of the evidence concerning the Texas event
and was well able to determine whether the assault was a “spur of the moment
thing” or not. Under these circumstances, the severity of the misconduct was
sufficiently attenuated. With regard to the second and third Mosley factors, the
same analysis as previously discussed applies, and White’s fourth point is
overruled. 
 
 
 
V. Voir Dire
A. The Questions
        In his fifth point, White complains that the trial court erred in overruling
his objection to a portion of the State’s voir dire on the repeat offender
paragraph, which had the effect of telling the venire panel that White was a
convicted felon. During the State’s voir dire, the prosecutor explained to the
jury that if a person had a prior felony conviction, then the offense in question
went from a second-degree felony to a first-degree felony, and the range of
punishment went from two to twenty years to five to ninety-nine years or life.
Then the prosecutor asked a prospective juror whether, if there was a certain
set of circumstances that justified it, that juror could and consider the
minimum, five-year range of punishment give White a five-year sentence. At
this point, White’s counsel objected that the question to the juror assumed that
there had been a prior conviction which changed the minimum punishment
range from two to five years. This objection was overruled. On appeal, White
argues that the question reduced the presumption of innocence because it
informed the jury of White’s prior felony conviction. 
B. Analysis
        The State may not read the exact allegations concerning enhancements
to the venire panel and cannot inform the venire panel of the substance of the
allegations. See Felton v. State, 659 S.W.2d 482, 484 (Tex. Crim. App.
1983). However, the prosecutor may inform the venire panel of the range of
punishment applicable if the State were to prove a prior conviction for purposes
of enhancement. Id. A review of the voir dire indicates that the prosecutor
explained the difference between a second-degree felony and a second-degree
felony enhanced to a first-degree felony, and the difference between the
punishment ranges for a second-degree felony and first-degree felony. She also
qualified her question regarding the minimum punishment range with the
phrase, “if it is proven to you that a person has a prior felony conviction.” 
Reviewing the voir dire, and understanding that neither the precise allegations
of enhancement nor their substance were read to the jury, we cannot say that
the trial court erred in overruling the objection. Point five is overruled.
VI. Ineffective Assistance of Counsel
        In his sixth point, White complains that he had ineffective assistance of
counsel when his attorney failed to object, or seek an instruction to disregard,
to Sander’s reference to White’s parole officer during the guilt/innocence phase
of the trial. 
A. Standard of Review
        We apply a two-pronged test to ineffective assistance of counsel claims. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, the
appellant must show that his counsel's performance was deficient; second, the
appellant must show the deficient performance prejudiced the defense. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. 
        In evaluating the effectiveness of counsel under the first prong, we look
to the totality of the representation and the particular circumstances of each
case. Thompson, 9 S.W.3d at 813. The issue is whether counsel's assistance
was reasonable under all the circumstances and prevailing professional norms
at the time of the alleged error. See Strickland, 466 U.S. at 688-89, 104 S. Ct.
at 2065. “[C]ounsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of reasonable
professional judgment.” Id. at 690, 104 S. Ct. at 2066. An allegation of
ineffective assistance must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at
813. Our scrutiny of counsel's performance must be highly deferential, and
every effort must be made to eliminate the distorting effects of hindsight. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.
        The second prong of Strickland requires a showing that counsel's errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
whose result is reliable. Id. at 687, 104 S. Ct. at 2064. In other words,
appellant must show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. 
Id. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id. The ultimate focus of
our inquiry must be on the fundamental fairness of the proceeding whose result
is being challenged. Id. at 697, 104 S. Ct. at 2070.
B. Analysis
        Sanders was being examined by the prosecutor when, toward the end of
her testimony, she mentioned that she had talked to a police officer while she
was at the hospital receiving treatment for her leg after being dragged in 
White’s car. She indicated that she gave the officer a written statement. 
Then, in response to the follow up question, “did did you give another one,”
she answered, “I gave another written statement is when I went to his parole
officer and . . . .“ The prosecutor stopped her testimony and asked a new
question.
        With regard to the first Strickland prong, an objection by defense counsel
at this point would have highlighted Sanders’s testimony regarding the parole
officer. Therefore, the record is insufficient to overcome the presumption that
defendant’s failure to object fell outside the wide range of professionally
competent assistance. With respect to the second prong of Strickland, the
testimony of Sanders and her daughter concerning White’s guilt is considerable,
and it cannot possibly be said that the outcome of the guilt/innocence phase
would had been affected by a defendant’s objection to this one remark about
a parole officer followed by the prosecutor halting the testimony. White’s sixth
point is overruled.
VII. Conclusion
        Having overruled White’s points, we affirm the judgment of the trial court.
 
                                                                  PER CURIAM


PANEL F:   MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2005
 
NOTES
1. See Tex. R. App. P. 47.4.
2. Officer Jara, who interviewed Sanders at the hospital, testified that “A lot
of times the people don’t know revolver or automatic. I carry an automatic. 
And I asked her did it look like my gun, and she said no; so I said a revolver,
and she said yes.” Sanders testified the gun was half the size of a BB gun, had
a curved handle with black tape wrapped around it, had two holes and was a
gun you have to open, put bullets in, and close back up. She also testified that
“I know that it was like on one of them — what do I want to say? Country
western movies like — what’s that? Country western movies how they be
having their guns and they pop them open like that. Q. Okay. What you are
referring to is usually a rifle; is that right? A. Rifle, shotgun.” 
3. At trial, Sanders’s daughter described the foregoing events as follows: White
“whipped my mama with a gun and drug my mama with the car”; he got the
gun from “[t]he trunk”; he “whipped my mama with it”; he “actually hit her
body”; T.A. was “crying” and “scared”; afterwards she saw the gun again,
which was “long,” and “in his lap.” When they were back at the house, “he
put the gun on the freezer.” 
4. “‘Firearm’ means any device designed, made, or adapted to expel a projectile
through a barrel by using the energy generated by an explosion or burning
substance or any device readily convertible to that use.” Tex. Penal Code Ann.
§ 46.01(3) (Vernon 2003).
5. The specific objection was that “It does not meet the requirements of the
Code of Criminal Procedure. There is no judgment and sentence, there is
nothing signed by a judge.” While the transcript has the “the court” as
speaking, taken in context it is clearly White’s counsel addressing the court. 
Presumably the objection refers to Texas Code of Criminal Procedure, art.
37.07 sec. 3(a)(1) and Texas Penal Code, art. 12.42(b). Tex. Code Crim. Proc.
Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2004-05); Tex. Penal Code Ann. §
12.42(b) (Vernon Supp. 2004-05).
6. “[W]hen the State offers into evidence a certified copy of a judgment and
sentence, it has made a prima facie case that the conviction reflected within
that judgment and sentence is a final conviction worthy of respect.” Jones v.
State, 77 S.W.3d 819, 822-23 (Tex. Crim. App. 2002).
7. In pertinent part, the Carter opinion states that: Regarding the types of
documents that the State may use as prima facie evidence of the defendant’s
prior convictions, LSA-R.S. 15:529.1(F) provides as follows: 
The certificates of the warden or other chief officer of any state
prison . . . or of any chief officer of any parish or county jail in this
state . . . or of the clerk of court of the place of conviction in the
state of Louisiana, under the seal of his office, if he has a seal,
containing the name of the person imprisoned, the photograph, and
the fingerprints of the person as they appear in the records of his
office, a statement of the court in which a conviction was had, the
date and time of sentence, length of time imprisoned, and date of
discharge from prison or penitentiary, shall be prima facie evidence
of the imprisonment and of the discharge of the person . . . under
the conviction stated . . . .
Id. at 709-10 (emphasis supplied).
8. Admissibility, and its predicate, authenticity, are two different things, despite
the wording in some case law (“Thus, [the pen packets] were self-authenticated
and admissible without further proof under Rules 902(1) and 902(4).”). Jones
v. State, 810 S.W.2d 824, 829 (Tex. App.—Houston [14th Dist.] 1991, no
pet.) (emphasis supplied). For example, a document may be authenticated
hearsay, and hence not admissible upon objection without an applicable hearsay
exception.
9. Question (to White’s brother): “You didn’t know he shot her in the back
while she was pregnant?” Answer: “I suppose I heard that.”